UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

United States of America,                    :
                                             :
                          Plaintiff,         :
                                             :
           -against-                         :    Case No. 97-cr-00006-JCC-1
                                             :
Derrick Vincent Redd,                        :
                                             :
                          Defendant.         :
                                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)

DEBEVOISE & PLIMPTON LLP

Ada Fernandez Johnson
Virginia bar number 42751
Attorney for Derrick Vincent Redd
Debevoise & Plimpton LLP
801 Pennsylvania Avenue N.W.
Washington, D.C. 20004
Phone: (202) 383-8000
Fax: (202) 383-8118
afjohnson@debevoise.com

John Gleeson*
Lauren Dolecki*
919 Third Avenue
New York, New York 10022
Phone: (212) 909-6000
Fax: (212) 909-6836
jgleeson@debevoise.com
lmdolecki@debevoise.com

*Pro Hac Vice Admission pending

## **TABLE OF AUTHORITIES**

**CASES**

*United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505 (M.D.N.C. June 28, 2019) .........13

*United States v. Booker*, 543 U.S. 220 (2005) ............................................................................11

*United States v. Cantu*
   No. 1:05-CR-458-1, 2019 WL 2498923 (S.D. Tex. June 17, 2019) ............................8, 12, 13

*United States v. Cantu-Rivera*, No. CR H-89-204, 2019 WL 2578272 (S.D. Tex. June 24, 2019) ....................................................................................................................8, 12, 13, 14

*United States v. Da Cai Chen*, 127 F.3d 286 (2d Cir. 1997) ......................................................11

*United States v. McGraw*, No. 2:02-cr-00018 (LJM)(CMM), 2019 WL 2059488 (S.D. Ind. May 9, 2019) ....................................................................................................................12

*United States v. Pierninanzi*, 23 F.3d 670 (2d Cir. 1994) ..........................................................12

*United States v. Simons*, No. 07-CR-00874, 2019 WL 1760840 (E.D.N.Y. Apr. 22, 2019) .........16

**STATUTES**

P.L. 98-473 (HJRes 648), 98 Stat 1837 (Oct. 12, 1984) ................................................................7

18 U.S.C. § 924(c) .............................................................................................................. *passim*

18 U.S.C. § 2113(a) .......................................................................................................................5

18 U.S.C. § 3142(g) .....................................................................................................................14

18 U.S.C. § 3553(a) ...........................................................................................................14, 15, 16

18 U.S.C. § 3582(c)(1)(A) .................................................................................................. *passim*

28 U.S.C. § 992(a)(2) ...................................................................................................................10

28 U.S.C. § 994(t) ........................................................................................................................10

P.L. 115-391, 132 Stat. 5194, at § 603 (Dec. 21, 2018) ...........................................................4, 7

U.S.S.G. § 1B1.13 ................................................................................................................11, 13, 14

**OTHER AUTHORITIES**

https://www.hrw.org/sites/default/files/reports/ ..........................................................................10

S. Rep. No. 98-225 (1983) ........................................................................................................9, 10

Defendant, Derrick Vincent Redd, respectfully moves this Court for an order reducing his sentence to time served based on the "extraordinary and compelling reasons" discussed below, pursuant to the newly-amended 18 U.S.C. § 3582(c)(1)(A)(i).  We also request oral argument on this motion.

## INTRODUCTION

Derrick Vincent Redd is approximately 22 years into a 603-month (over 50 year) prison term.  The bulk of this harsh sentence was not based on Redd's role in the offense or the severity of the crime.  Instead, it was a result of mandatory consecutive sentences imposed pursuant to three convictions under 18 U.S.C. § 924(c).  Redd received just over 5 years (63 months) for the underlying bank robberies; the remaining 45 years was the result of the mandatory consecutive sentences imposed pursuant to three convictions under 18 U.S.C. § 924(c).  Redd was 40 years old when he was arrested; today he is 63.

On August 16, 2019, Redd submitted a written request to the records office at FCI Fairton, because the warden position is currently vacant, asking that the office move this Court for a reduction of Redd's sentence under 18 U.S.C. § 3582(c)(1)(A)(i).  As of the date of this filing, no such motion has been made.

Thanks to the amendments to § 3582(c)(1)(A) that were enacted as part of the First Step Act, the Court is now empowered to bring a measure of justice to Redd's sentence, and we ask the Court to do just that for the reasons set out below.  *See* P.L. 115-391, 132 Stat. 5194, at § 603 (Dec. 21, 2018).

**FACTUAL BACKGROUND**

Redd was charged with three counts of bank robbery in violation of 18 U.S.C. § 2113(a) (counts 1, 3, and 6), one count of attempted bank robbery in violation of § 2113(a) (count 5), and three counts of using a firearm during a crime of violence in violation of § 924(c) (counts 2, 4, and 7).

He was offered a plea bargain under which he would plead guilty to one bank robbery count (count 3) and two § 924(c) counts (counts 4 and 7); if accepted, this would have resulted in a likely sentence of approximately 340 months (just over 28 years).  Redd initially accepted the plea bargain and pled guilty to these three counts.  But Redd subsequently—and before trial— filed a motion to withdraw his guilty plea as to count 7 (one of the § 924(c) counts).  At the hearing on the motion, the government stated it "object[ed] strenuously to having [Redd] renegotiate[] the plea with the Court at this point, [and] knock out a count that provides for a 20-year consecutive sentence."  Aug. 8, 1997 Tr. at 4.  The government further stated that "if you allow him to withdraw his guilty plea to count seven, the Government would prefer to just wipe out the entire plea agreement and we'll just start from point one and try him on everything."  *Id.* at 6.  The Court granted Redd's motion to withdraw his plea only as to count 7, but maintain his plea as to counts 3 and 4.

At Redd's sentencing on counts 3 and 4, defense counsel referenced the fact that the government had moved the court to set a trial date on *all* of the remaining counts, including the third § 924(c) count that would have been dismissed under the plea bargain.  Redd's counsel argued that "[w]hen we were here on the motion to withdraw, [the Assistant United States Attorney's] position was that he resented the fact that we were trying to, to use his words, renegotiate the agreement through the Court.  Our position now is that what has happened as a

result of this misunderstanding . . . Mr. Redd is in a far worse position tha[n] he was in when this case was originally brought."  Aug. 22, 1997 Tr. at 11.  The Court stated that the parties "ought to try to work something out again," but acknowledged that it could not "prevent" the government from trying the other counts.  *Id.* at 10-11.  Redd was sentenced to 60 months on the bank robbery and one § 924(c) count.

Subsequently, Redd proceeded to trial on two bank robbery counts, one attempted bank robbery count, and two § 924(c) counts.  He was convicted of all counts.  He was sentenced to a 543-month prison term on these charges—63 months on the bank robbery and attempted bank robbery counts (the lowest sentence possible under the then-mandatory applicable Guidelines range), to be followed by the mandatory, consecutive sentence of 240 months each on the § 924(c) counts.  His decision to withdraw his plea of guilty on count 7 and to exercise his right to trial cost him 20 more years in prison on top of the already-harsh sentence called for by the plea bargain.  Combined with the five-year mandatory, consecutive sentence that Redd received as a result of his plea bargain, Redd was sentenced to a total of 603 months.  Even though Redd has served approximately 22 years in prison, his projected release date is in 2040.

As noted above, on August 16, 2019, Redd submitted an amended Compassionate Release form to the records office of the institution where he is incarcerated, requesting that the office move this Court for a reduction of his sentence.  As of the date of filing this petition— 49 days after Redd made his written request to the records office—the Bureau of Prisons (the "BOP") has not filed a motion on Redd's behalf with the Court.

## DISCUSSION

The Court now has the authority to reduce Redd's sentence based on the extraordinary and compelling circumstances presented here.  First, it has the jurisdiction to hear this motion

because more than 30 days have passed since the records office received Redd's request, and the Director of the BOP has not filed a motion with this Court. Second, the changes to 18 U.S.C. § 3582(C)(1)(A)(i) made by the First Step Act have finally vested *the Court* with the authority to decide when extraordinary and compelling circumstances warrant a sentence reduction. Third, as this Court has already observed, the circumstances presented here cry out for a sentence reduction.

### A. The Court Has Jurisdiction to Grant Release for "Extraordinary and Compelling Reasons"

The compassionate release statute was first enacted as part of the Comprehensive Crime Control Act of 1984. It provided that a district court could not modify a final term of imprisonment except in four situations, one of which was the existence of "extraordinary and compelling reasons" warranting the reduction, as determined by the sentencing court. But although the courts had the final decision-making authority over whether a sentence would be reduced, the statute imposed a gatekeeper—that authority could be invoked only upon a motion by the Director of the BOP. Without such a motion, sentencing courts were powerless to reduce a prisoner's sentence, even if the court concluded that extraordinary and compelling reasons warranted the reduction. 18 U.S.C. § 3582(c)(1)(A)(i); *see also* PL 98–473 (HJRes 648), PL 98–473, 98 Stat 1837 (Oct. 12, 1984).

That changed when Congress enacted the First Step Act, which amended § 3582(c)(1)(A). *See* P.L. 115-391, 132 Stat. 5194, at § 603 (Dec. 21, 2018). Under the amended statute, a court can now reduce a sentence for "extraordinary and compelling reasons" in *two* circumstances: (i) if the Director of the BOP files a motion requesting such relief; or (ii) "upon motion of the defendant," if the defendant has fully exhausted all administrative remedies to appeal the BOP's failure to bring a motion, or if 30 days has lapsed "from the receipt of such a

7

request by the warden of the defendant's facility," whichever is earlier.   18 U.S.C. § 3582(c)(1)(A).  *See also United States v. Cantu*, No. 1:05-CR-458-1, 2019 WL 2498923, at *3 (S.D. Tex. June 17, 2019) ("[u]nder the newly amended § 3582(c)(1)(A) [defendant] has standing to bring this motion because more than 30 days elapsed between his reduction-in-sentence request to the warden and a response."); *United States v. Cantu-Rivera*, No. CR H-89-204, 2019 WL 2578272, at *1 (S.D. Tex. June 24, 2019) (defendant's "petition . . . meets the requirement of a lapse of 30 days from the receipt by the warden of the defendant's facility . . . The Court therefore has the authority to address the motion of the defendant.").  As noted above, Redd submitted his request to the records office on August 16, 2019.  As of the date of this filing, more than 30 days after Redd submitted his request, the BOP has not filed a motion with this Court on Redd's behalf.  Accordingly, Redd is entitled to bring his motion directly to the Court pursuant to 18 U.S.C. § 3582(c)(1)(A), and this Court is vested with the jurisdiction to rule on the requested relief.

## B. The Relief Requested Here is Consistent with the Text of the Statute and the Sentencing Commission's Policy Statement

### 1. *Congress Did Not Limit "Extraordinary and Compelling Reasons" to a Specific, Enumerated Set of Circumstances*

Congress did not define what would constitute an "extraordinary and compelling reason" warranting a reduction of a sentence under § 3582(c).  Indeed, the legislative history confirms that it intended to grant federal sentencing courts broad discretion to make those determinations on a case-by-case basis and to reduce fundamentally unfair sentences where such reasons exist.

Congress's initial goal in passing the Comprehensive Crime Control Act was to abolish federal parole and create a "completely restructured guidelines sentencing system."  S. Rep. No. 98-225, at 52, 53 n.74 (1983).  But with the elimination of parole as a corrective measure in

cases where early release is warranted, Congress recognized the need for an alternative review

process.  It therefore allowed for judicial reduction of certain sentences under § 3582(c):

> The Committee believes that there may be unusual cases in which
> an eventual reduction in the length of a term of imprisonment is
> justified by changed circumstances.  These would include cases of
> severe illness, cases in which *other extraordinary and compelling
> circumstances* justify a reduction of an unusually long sentence,
> and some cases in which the sentencing guidelines for the offense
> of which the defendant was convicted have been later amended to
> provide a shorter term of imprisonment.

*Id*. at 55–56 (emphasis added).  Put differently, rather than having the Parole Commission review

every federal sentence, Congress decided to let sentencing courts decide, in a far narrower band

of cases presenting extraordinary and compelling circumstances, if "there is a justification for

reducing a term of imprisonment."  *Id*. at 56.

   The situations listed in § 3582(c) were thus intended to serve as "safety valves for

modification of sentences," enabling sentence reductions when justified by factors that

previously could have been addressed through the (now abolished) parole system.  *Id.* at 121.

This approach was intended to keep "the sentencing power in the judiciary where it belongs,"

rather than with a federal parole board, and permitted "later review of sentences in particularly

*compelling situations*."  *Id*. (emphasis added).  Notably, Congress imposed no limitations on

courts' authority to make such determinations, declining to define what constitutes

"extraordinary and compelling reasons" or to otherwise constrain judges' discretion.  The

mandate was simple:  If extraordinary and compelling circumstances were present, they would

"justify a reduction of an unusually long sentence."  S. Rep. No. 98-225, at 55–56 (1983).

   Unfortunately, the establishment of the BOP as a gatekeeper effectively eliminated the

safety valve.  The BOP, which is of course part of the Department of Justice, hardly ever opened

the gate.[1]  As a result, Congress, through the First Step Act, allowed direct access to the

sentencing court once an inmate's request to the BOP has been exhausted.

2. *The U.S. Sentencing Commission Has Not Limited "Extraordinary and Compelling Reasons" for Compassionate Release to Medical, Age-Related, or Family Circumstances*

When enacting § 3582(c), Congress delegated the responsibility for expounding upon

what constitutes "extraordinary and compelling reasons" to the U.S. Sentencing Commission

(the "Commission").  *See* 28 U.S.C. § 994(t) ("The Commission . . . shall describe what should

be considered extraordinary and compelling reasons for sentence reduction, including the criteria

to be applied and a list of specific examples."); *see also* 28 U.S.C. § 992(a)(2) (the Commission

shall promulgate general policy statements regarding "the sentence modification provisions set

forth in section[ ] . . . 3582(c) of title 18").  The resulting policy statement by the Commission

sets forth the following factual considerations: (i) the medical condition of the defendant

(including terminal illness and other serious conditions and impairments); (ii) the age of the

defendant (for those 65 and older with serious deterioration related to aging who have completed

at least 10 years or 75 percent of the term of imprisonment); (iii) the family circumstances of the

defendant (where a child's caregiver or spouse dies or becomes incapacitated without an

alternative caregiver); and (iv) "other reasons" as determined by the BOP.  U.S.S.G. § 1B1.13,

Application Note 1(A).  The fourth category specifically includes "an extraordinary and

compelling reason other than, or in combination with," the first three.  *Id.*  Additionally, the

---

[1] *See, e.g.*, <u>The Answer is No: Too Little Compassionate Release in US Federal Prisons</u>, Human Rights Watch, 2 (Nov. 2012), https://www.hrw.org/sites/default/files/reports/us1112ForUploadSm.pdf (noting that between 1992 and 2012, the average annual number of prisoners who received compassionate release following a motion by the BOP was less than two dozen).

commentary makes clear that the extraordinary and compelling reasons "need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13, Application Note 2. In other words, even if an "extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court, [that fact] does not preclude consideration for a [sentence] reduction." *Id.*

As the above language makes clear, extraordinary and compelling reasons for a sentence reduction may exist even when an inmate is not elderly, ill, or facing complicated family circumstances. And though the policy statement—which has not been amended since the passage of the First Step Act—vests the Director of the BOP with the authority to determine when such "other reasons" might warrant a reduction in a particular case, that language is now irreconcilable with the revised statute, which permits a defendant to bring a § 3582 motion to the Court without any response from the BOP or even if the BOP expressly decides that no reasons warrant a reduction of sentence. Accordingly, that aspect of the commentary is not binding on the courts for two reasons: (1) the Guidelines are advisory only, *see United States v. Booker*, 543 U.S. 220 (2005); and (2) it is inconsistent with the text and the undisputed purpose of the First Step Act. *See United States v. Da Cai Chen*, 127 F.3d 286, 291 (2d Cir. 1997) (commentary that relates to a statute, or to a guideline that mirrors as statute (as here), is not entitled to deference); *see also United States v. Pierninanzi*, 23 F.3d 670, 683 (2d Cir. 1994). Indeed, at least three district courts, since the passage of the First Step Act, have observed that §1B1.13 "has not yet been updated to reflect that defendants (and not just the BOP) may move for compassionate release," *United States v. McGraw*, No. 2:02-cr-00018 (LJM)(CMM), 2019 WL 2059488, at *2 (S.D. Ind. May 9, 2019), and "[b]ecause the current version of the Guideline policy statement conflicts with the First Step Act, the newly-enacted statutory provisions must be given effect."

11

*Cantu-Rivera*, 2019 WL 2578272, at *2 n.1.  *See also Cantu*, 2019 WL 2498923, at *4 ("Given the changes to the statute, the policy-statement provision that was previously applicable to 18 U.S.C. § 3582(c)(1)(A) no longer fits with the statute and thus does not comply with the congressional mandate that the policy statement must provide guidance on the appropriate use of the sentence-modification provisions under § 3852.").

The Court's authority to reduce Redd's sentence is not only consistent with the statute, but also with the language in the policy statement, which makes clear that "[t]he court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction)" and encouraging the filing of a motion for compassionate release where a defendant "meets any of the circumstances set forth in [the] Application Note."  As mentioned above, in amending the language of 18 U.S.C. § 3582(c)(1)(A), Congress finally empowered *courts* to make this critical determination, even in the face of a BOP determination that a defendant's case is not extraordinary or compelling.

Thus, just a few months ago, a district court in Texas held as follows:

> [T]he correct interpretation of § 3582(c)(1)(A)—based on the text, statutory history and structure, and consideration of Congress's ability to override any of the Commission's policy statements 'at any time' [. . .]—is that when a defendant brings a motion for sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G § 1B1.13 cmt. N.1(A)-(C) warrant granting relief.

*Cantu*, 2019 WL 2498923, at *5.  This Court therefore may make an independent assessment of Redd's case in considering whether extraordinary and compelling reasons warrant the reduction of his sentence.[2]

3.  *Extraordinary and Compelling Circumstances Warrant a Reduction in Redd's Sentence*

The practice of "stacking" enhanced § 924(c) charges in a first offense has received wide condemnation for many years.  Finally, last December, this practice was eliminated.  The government can no longer invoke the dramatically enhanced mandatory consecutive sentences prescribed for "second or successive" § 924(c) convictions in the same case in which the first such conviction is obtained.  From now on, those staggering sentences will be permissible only after a truly "subsequent" conviction.  Notably, the fact that this amendment was titled a "Clarification of Section 924(c)" makes clear that 924(c) was never intended by Congress to result in sentences like the one at issue here.  That fact alone constitutes an extraordinary and compelling basis for a reduction of sentence.

---

[2] *See also Cantu*, 2019 WL 2498923, at *4 ("Given the changes to the statute, the policy-statement provision that was previously applicable to 18 U.S.C. § 3582(c)(1)(A) no longer fits with the statute and thus does not comply with the congressional mandate that the policy statement must provide guidance on the *appropriate use* of sentence-modification provisions under § 3582."); *Cantu-Rivera*, 2019 WL 2578272, at *2 n.1 (finding authority to determine that defendant was entitled to relief under the catch-all provision in the commentary to § 1B1.13 because the "current policy statement predates the enactment of the First Step Act and is not likely to be amended within the foreseeable future due to lack of a sufficient number of serving members of the Sentencing Commission."); *United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505, at *6 (M.D.N.C. June 28, 2019) ("While the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i).").

In addition, a motion for relief under 18 U.S.C. § 3582(c)(1)(A)(i) requires a court to consider other factors that may warrant relief, including the defendant's rehabilitation and other factors bearing on the person Redd is today.  As set forth below, these factors further establish the sort of "extraordinary and compelling reasons" that warrant a reduction of his 603-month sentence.  *See also Cantu-Rivera*, 2019 WL 2578272, at *2 (the court considered rehabilitation and the "unwarranted [sentencing] disparities among defendants" in determining resentencing was appropriate).  As set forth below, these factors further establish the sort of "extraordinary and compelling reasons" that warrant a reduction of Redd's 603-month sentence.

### C. The Criteria for Reassessing the Length of Redd's Sentence Weigh Strongly in Favor of a Sentence Reduction.

In determining whether Redd's sentence should be reduced, the Court must decide, *inter ali*a, whether Redd presents a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g).  U.S.S.G. § 1B1.13(2).  If he does not, the Court looks to the factors outlined in 18 U.S.C. § 3553(a).  As explained below, all of these factors weigh strongly in favor of relief in Redd's case.

#### 1.  *Redd Is Not a Danger*

Redd is not a danger to the community.  Though he engaged in serious criminal conduct that was deserving of serious punishment, the evolution of Redd's character in the more than 22 years he has been incarcerated precludes a finding that he poses a danger.  Redd's lengthy sentence was not based in any way on the dangerousness of his criminal conduct or the need to incapacitate him, but was instead the result of a sentence enhancement the government invoked solely because Redd exercised his constitutional right to go to trial.

Redd has participated in over 200 hours worth of programs while incarcerated, including in courses for interviewing techniques and a computer parenting program.  In 2019, he received

14

certificates of achievement in keyboarding, public speaking, and CDL truck driving.   Ex. 1.
Redd was also recognized by the Moorish Science Temple of America as a faithful, diligent
Moor. Ex. 2.

The fact that Redd will be an asset to the community, rather than a danger, is further
demonstrated by an offer of employment that has already been extended to him.   The chief
executive officer of Leysath Security Firm, Inc. has expressed his commitment to hiring Redd
upon his release.   Ex. 3.   Redd's work ethic has been recognized by his prison supervisors, who
have described him as an "[o]utstanding employee . . . [and] great worker[.]"   Ex. 4.   One
supervisor noted that he is "[a]lways on time and always working, encouraging others to work."
*Id.*

In short, Redd is clearly not a danger to the community.

2. *The Relevant § 3553(a) Factors Weigh Strongly in Favor of Relief*

This Court must next weigh the factors set forth in 18 U.S.C. § 3553(a) to determine
whether Redd's request for a sentence reduction should be granted.   As discussed above, Redd's
rehabilitation and his good behavior during his incarceration (with limited disciplinary history)
weighs in favor of a reduced sentence.   While his crimes were serious, he has accepted
responsibility for them and has already endured serious punishment for them.

The 22-plus years Redd has already served in prison have been transformative for him.
In his own words, because of his age, there is no longer any "room for error" in his life.   He has
dedicated himself to the rehabilitation of himself, personifying the objectives of § 3553(a)(2) that
incarceration "provide the defendant with needed educational or vocational training, medical
care, or other correctional treatment."   There is no doubt that the time Redd has already served is

15

more than sufficient to achieve the objectives of his sentence and incarceration, including to deter similar misconduct.

Finally, this Court should consider the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(6). This factor, too, weighs strongly in favor of a sentence reduction for Redd. Following the enactment of the First Step Act, never again will a defendant that is similarly situated to Redd, who is facing their first § 924(c) charge be subjected to onerous, enhanced mandatory consecutive sentences for "second or successive" § 924(c) charges in the same case. There will be a glaring disparity between Redd's sentence and those of defendants that have committed similar crimes post the enactment of the First Step Act, merely because of timing of the offenses committed.

### D.  Redd Is Deserving of Mercy

With the passage of the First Step Act, Congress emphasized the imperative of reducing unnecessary incarceration and avoiding unduly punitive sentences that do not serve the ends of justice. *United States v. Simons*, No. 07-CR-00874, 2019 WL 1760840, at *8 (E.D.N.Y. Apr. 22, 2019).

When Redd was arrested, he was struggling—financially and personally. He grew up playing basketball, both in high school and on a scholarship in college, at Kutztown State University. But his dreams of pursuing basketball ceased with a knee injury sustained in a game he played in a semi-professional league when he was in college. Both he and members of his family explain that injury changed the path he had been moving toward. He lost focus. He dropped out of school and bounced between jobs. Eventually, he moved to Virginia where,

separated from his family, he became even more lost.   He also struggled intermittently with substance abuse.

Redd's time in prison has changed him; his conduct and initiative during his incarceration demonstrate rehabilitation.   He has spent his time in prison improving himself, has had no major disciplinary infractions, and has continued to work towards justice for himself and for others incarcerated with him.   He has demonstrated an unwavering commitment to becoming a productive member of society if released.   If released, he will move in with his 87-year-old mother, Edith Brown, who lives with her 93-year-old husband in a three-bedroom ranch in Philadelphia.   Mrs. Brown hopes that having her son live with her will help ease the burden of caring for the house and the yard.

Redd has remained close with his family throughout his period of incarceration, and has the strong support of four siblings, two of whom live in the Philadelphia area, as well as their families and others in the Philadelphia community.   He is also hopeful that his release will allow him to reconnect with his daughter, who is in her late 20s and has spent the entirety of her adult life—and much of her childhood—without the presence of her father.   Redd has a family and a community ready to support him and a life to build for himself and them.

For the reasons mentioned above, we respectfully urge the Court to use the power conferred by the First Step Act to reduce Redd's sentence.

## <u>CONCLUSION</u>

Congress never intended to permit, let alone to mandate, the excessive punishment Redd received in this case.   It has now given the Court the power to grant Redd relief from that sentence.   Redd respectfully requests that the Court take this opportunity to grant a reduction in

his sentence based on extraordinary and compelling reasons, and reduce his sentence to time served.

Dated:        Washington, D.C.
              October 9, 2019

                              DEBEVOISE & PLIMPTON LLP

                              By: /s/ Ada Fernandez Johnson
                              Ada Fernandez Johnson
                              Virginia bar number 42751
                              Attorney for Derrick Vincent Redd
                              Debevoise & Plimpton LLP
                              801 Pennsylvania Avenue N.W.
                              Washington, D.C. 20004
                              Phone: (202) 383-8000
                              Fax: (202) 383-8118
                              afjohnson@debevoise.com

                              John Gleeson*
                              Lauren Dolecki*
                              919 Third Avenue
                              New York, New York 10022
                              Phone: (212) 909-6000
                              Fax: (212) 909-6836
                              jgleeson@debevoise.com
                              lmdolecki@debevoise.com

                              *Pro Hac Vice Admission pending

18

**CERTIFICATE OF SERVICE**

I hereby certify that on the 9th day of October, 2019, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system. I hereby certify that I will mail the document by FedEx to the following non-filing user:

Morris Parker
Justin W. Williams United States Attorney's Building
2100 Jamieson Ave
Alexandria, VA 22314

/s/Ada Fernandez Johnson
Ada Fernandez Johnson
Virginia bar number 42751
Attorney for Derrick Vincent Redd
Debevoise & Plimpton LLP
801 Pennsylvania Avenue N.W.
Washington, D.C. 20004
Phone: (202) 383-8000
Fax: (202) 383-8118
afjohnson@debevoise.com