IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:97-cr-00006-AJT |
| | ) | |
| DERRICK VINCENT REDD, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(C)(i)**

In a single month of 1996, defendant Derrick Vincent Redd committed three armed bank robberies and tried to commit a fourth.  Prior to trial, he partially withdrew from a plea agreement that would have subjected him to a then-mandatory Guidelines range of 33 to 41 months plus 300-months of then-mandatory consecutive sentences under 18 U.S.C. § 924(c). Instead, he chose to go to trial on charges that would have resulted in a mandatory minimum 540-month sentence under 18 U.S.C. § 924(c) alone.  The jury convicted him on all counts, and this Court imposed a total sentence of 603 months.

Now, more than twenty years later, Redd seeks compassionate release, but not on the basis of any change in medical, age, or familial circumstances or any other ground recognized by the United States Sentencing Commission.  Rather, he seeks to obtain the benefit of a change in statutory penalties that Congress expressly declined to apply to past offenders.  There is no statutory mechanism to grant Redd's requested relief, and this Court has no general power of clemency to reduce sentences.  The government therefore respectfully requests that the Court deny Redd's motion.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In 1997, Redd was charged in a seven-count indictment: three counts of bank robbery, in violation of 18 U.S.C. § 2113(a) & (d) (Counts 1, 3, and 6); one count of attempted bank robbery, in violation of 18 U.S.C. § 2113(a) (Count 5); and three counts of using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) (Counts 2, 4, and 7).

The government offered to let Redd plead guilty to one of the bank robbery counts (specifically, Count 3) and two of the § 924(c) counts (specifically, Counts 4 and 7) in exchange for dismissal of the remaining counts.  Under the proposed plea bargain, Redd was exposed to a sentencing range of 33 to 41 months on Count 3, a 5-year consecutive mandatory sentence on Count 4, and a 20-year consecutive mandatory sentence on Count 7.  In April 1997, Redd took the deal, and the Court accepted his guilty pleas.  Not long thereafter, however, Redd balked and sought to withdraw his plea of guilty to Count 7.  The Court permitted him to do so but maintained his guilty pleas as to Counts 3 and 4.

Redd proceeded to trial on the remaining counts.  In November 1997, a jury convicted him of them all.  When he was sentenced, the Court imposed the mandatory minimum 540-month sentence on his § 924(c) convictions and a within-mandatory-Guidelines sentence of 63 months on the substantive and attempted robberies.  The Fourth Circuit affirmed.  *See United States v. Redd*, 161 F.3d 793 (4th Cir. 1998).  Over the ensuing years, Redd has filed numerous motions for post-conviction relief and related appeals.  Each one has failed.

On October 9, 2019, Redd, with the assistance of *pro bono* counsel, filed the instant motion seeking a sentence reduction.  In the motion, Redd states that, on August 16, 2019, he submitted a written request to the records office at the facility where he is being detained, FCI

Fairton, asking it to file a motion to reduce his sentence under 18 U.S.C. § 3582(c)(1)(A)(i).

Redd's filing does not attach evidence showing receipt or disposition of his petition, but

undersigned counsel recently learned from the Bureau of Prisons (the "BOP") that the request

was received on August 20, 2019, and subsequently denied in writing by the acting warden on

October 17, 2019.  *See* Ex. 1 ("[Y]our non-medical circumstances are not extraordinary or

compelling.  Furthermore, your release would minimize the severity of your offenses.  Although

your institutional adjustment and programming are commendable, you are not recommended for

a [reduction in sentence].").

## LEGAL FRAMEWORK

Before addressing the substance of Redd's motion, it is necessary to describe the legal

backdrop against which it stands.

## I.    COMPASSIONATE RELEASE

In 1984, Congress created what is now known as "compassionate release" for federal

inmates.  *See* Comprehensive Crime Control Act of 1984, Pub. L. No. 98-473, tit. II, 98 Stat.

1976, 1998 (codified as amended at 18 U.S.C. § 3582(c)(1)(A)).  As a general matter, Congress

provided, a court "may not modify a term of imprisonment once it has been imposed."  *Id.*; *cf.* 18

U.S.C. § 3582(c).  However, Congress created an exception when three conditions are met:

(1) the Director of the BOP has moved for a sentence reduction; (2) the court finds that

"extraordinary and compelling reasons warrant such a reduction"; and (3) the court finds that

"such a reduction is consistent with applicable policy statements issued by the Sentencing

Commission."  98 Stat. at 1998–99.  This avenue to early release from prison is very narrow.

*See* S. Rep. No. 98-225, at 121 (1983) (describing § 3582(c)(1)(A) as intended to apply "to the

unusual case in which the defendant's circumstances are so changed, such as by terminal illness, that it would be inequitable to continue the confinement of the prisoner").

Congress has never defined what constitutes "extraordinary and compelling reasons" capable of justifying compassionate release. Instead, Congress instructed the United States Sentencing Commission (the "Sentencing Commission") to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The Sentencing Commission has in turn promulgated a policy statement under § 1B1.13 of the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G."). Notably, Congress has instructed the Sentencing Commission that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason [for compassionate release]," 28 U.S.C. § 994(t), and the Commission adopted a conforming application note, *see* U.S.S.G. § 1B1.13, app. note 3.

As relevant here, the policy statement creates three requirements for compassionate release under § 3582(c)(1)(A). First, the court must conclude that "[e]xtraordinary and compelling reasons warrant the reduction." U.S.S.G. § 1B1.13(1)(A).[1] Second, the court must conclude that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.* § 1B1.13(2). Third, the court must conclude that "[t]he reduction is consistent with this policy statement." *Id.* § 1B1.13(3).

Application note 1 to § 1B1.13 defines what can constitute "extraordinary and compelling reasons" using three specific categories and an open-ended category. The three specific categories include where the defendant has a serious medical condition, such as a

---

[1] The statement alternatively provides that absent extraordinary and compelling reasons, a court may find that a defendant is at least 70 years old and has served at least 30 years on his conviction. *See* U.S.S.G. § 1B.13(1)(B). Redd has not raised this ground for relief.

terminal illness (subdivision (A)), the defendant is at least 65 years old and certain other

conditions are met (subdivision (B)), or the defendant's family circumstances have changed such

that the defendant is the only available caregiver for a minor child or incapacitated spouse

(subdivision (C)).  U.S.S.G. § 1B1.13, app. note 1.  The open-ended provision—labeled "Other

Reasons"—allows for compassionate release if, "[a]s determined by the Director of the [BOP],

there exists in the defendant's case an extraordinary and compelling reason other than, or in

combination with, the reasons described in subdivisions (A) through (C)."  *Id.*[2]

Importantly, § 3582(c)(1)(A) explicitly states that a court may only reduce a sentence

when "such a reduction is consistent with the applicable policy statements issued by the

Sentencing Commission."  Interpreting materially identical language in § 3582(c)(2) related to

Guidelines amendments, the Supreme Court has held that the statute thus makes the policy

statements binding on courts.  *See Dillon v. United States*, 560 U.S. 817, 826–27 (2010).  *Dillon*

concluded that a court must first find that a reduction is consistent with the Sentencing

Commission's policy statement *before* it can consider whether the reduction is warranted under

the § 3553(a) factors.  *Id.*

Ultimately, it is the defendant's burden to prove that he is entitled to compassionate

release under § 3582(c)(1)(A)(i).  *See White v. United States*, 378 F. Supp. 3d 784, 785 (W.D.

Mo. 2019); *see generally Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56–57 (2005) ("Absent

some reason to believe that Congress intended otherwise, . . . we will conclude that the burden of

persuasion lies where it usually falls, upon the party seeking relief.").

---

[2] Consistent with subdivision (D), the BOP has promulgated a program statement to set forth its evaluation criteria.  *See* Program Statement 5050.50 (Jan. 17, 2019), *available at* https://www.bop.gov/policy/progstat/5050_050_EN.pdf.  In it, the BOP notes that it uses § 3582(c)(1)(A) in "particularly extraordinary or compelling circumstances which could not reasonably have been foreseen by the court at the time of sentencing."  *Id.* at 1.

## II.     THE FIRST STEP ACT

In 2018, Congress passed—and the President signed into law—the First Step Act.  *See*

Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).  The Act contained two statutory

amendments relevant to this case.

First, Congress amended § 3582(c)(1)(A) to permit defendants to move directly in district

court for compassionate release from incarceration, provided they first make their request to

BOP.  *See* First Step Act, sec. 603(b), 132 Stat. at 5239.

Second, Congress amended the penalty provision set forth in § 924(c)(1)(C), requiring

consecutive 25-year sentences under that subsection only if the offender has a prior § 924(c)

conviction that has become final.  First Step Act, sec. 403(a), 132 Stat. at 5221–22.[3]  However,

Congress expressly declined to apply this change to any offense that occurred prior to enactment

if a sentence had already been imposed.  *See id.*, sec. 403(b), 132 Stat. at 5222 (providing that

this amendment applies to "any offense that was committed before the date of enactment of this

Act, if a sentence for the offense has not been imposed as of such date of enactment"); *see also*

*United States v. Melvin*, 777 F. App'x 652, 653 (4th Cir. 2019) ("Congress expressly limited the

retroactivity of [section 403(a)] to offenses for which sentence was not yet imposed as of the

First Step Act's date of enactment.").

---

[3] The First Step Act did not eliminate criminal liability for multiple § 924(c) convictions, even when a defendant does not have a prior, final conviction under that subsection.  Those multiple § 924(c) convictions must still carry consecutive sentences.  *See* 18 U.S.C. § 924(c)(1)(D)(ii).  All that the First Step Act did, for those qualifying defendants without prior, final § 924(c) convictions, is eliminate the stacking of 25-year mandatory minimum sentences under § 924(c)(1)(C).

## ARGUMENT

Redd seeks a sentence reduction based on "extraordinary and compelling" reasons warranting compassionate release.  His primary claim is that the difference between the sentence he received and the sentence he would receive now after the First Step Act qualifies as such a reason.  But neither that ground nor any other that can be gleaned from his motion falls within the "extraordinary and compelling" reasons recognized by the Sentencing Commission in § 1B1.13.  Although Redd invokes the open-ended subdivision (D) provision, that reed proves too thin: the plain text authorizes only such "[o]ther [r]easons" "[a]s determined by the Director of the Bureau of Prisons."  The Director of the BOP has declined to find such other reasons here, and the statute does not authorize this Court to create its own "[o]ther [r]easons."  Moreover, even if that were allowed, Redd's proffered reasons do not fall within the kind of "extraordinary and compelling" reasons contemplated by Congress, the Sentencing Commission, and the courts. For these reasons, and those articulated below, the Court should deny Redd's motion.

## I.   ONLY THE BOP HAS THE AUTHORITY TO DECIDE WHETHER AN "OTHER REASON" IS "EXTRAORDINARY AND COMPELLING"

Contrary to Redd's assertion, the Court does not have the power to determine whether his proffered reasons for compassionate release—*i.e.*, the First Step Act's reduction in the length of certain mandatory sentences for convictions under § 924(c) and, to a lesser extent, his decision to withdraw from a plea bargain and proceed to trial, which ultimately netted him more time than the government originally offered him—are "extraordinary and compelling" independent of the Sentencing Commission's specifically enumerated grounds.  That authority is solely vested in the BOP.

Redd does not contend that any of subdivisions (A)–(C) of application note 1 of § 1B1.13 apply to him.  Instead, he rests his motion solely on subdivision (D)'s "[o]ther [r]easons"

7

provision.  However, the note is explicit: only such another "extraordinary and compelling" reason, "[a]s determined by the Director of the [BOP]," can justify compassionate release. U.S.S.G. § 1B1.13, app. note 1.  And it is well-settled that "commentary in the Guidelines Manual that interprets or explains a guideline," like the foregoing excerpt from § 1B1.13's application notes, "is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline."  *Stinson v. United States*, 508 U.S. 36, 38 (1993).

No matter, Redd says, because in the wake of the First Step Act, subdivision (D) is no longer limited to "extraordinary and compelling" reasons determined by the BOP but may include additional reasons determined by the courts.  This is so, he posits, because the policy statement has not yet been updated by the Sentencing Commission and is therefore irreconcilable with the amendments to § 3582(c)(1)(A) that eliminated the BOP's historical gatekeeping role. For two reasons, however, this argument fails.

*First*, Redd argues that a federal inmate's post-First Step Act ability to bring a compassionate release motion directly to the court without any response from the BOP is "inconsistent" with the BOP's continued authority to decide whether a defendant has properly stated an "extraordinary and compelling" reason under subdivision (D).  Dkt. No. 300 at 11. This is incorrect.  Permitting defendants to bring motions directly does not conflict with the Sentencing Commission's deference to the BOP on whether a reason other than medical, age, or familial circumstances is "extraordinary and compelling."  Indeed, at least one court has already so held.  *See United States v. Lynn*, No. 89-0072-WS, 2019 WL 3805349, at *4 (S.D. Ala. Aug. 13, 2019), *appeal docketed*, No. 19-3239 (11th Cir. Aug. 21, 2019) ("[T]here is no . . . inherent incompatibility between a statute allowing defendants to move for compassionate release and a

8

policy statement allowing BOP a role in determining whether compassionate release is warranted, and thus no basis for deeming the policy statement overridden.").  Buttressing the *Lynn* court's conclusion is the fact that the First Step Act still requires requests for compassionate release to be routed through the BOP in the first instance, reflecting Congress's view that the BOP is especially well-suited to evaluating the full spectrum of circumstances of the inmates in its care.

*Second*, Redd presumes that courts have discretion to decide that a policy statement does not reflect an "appropriate use of . . . the sentence modification provisions set forth in [§ 3582(c)]."  28 U.S.C. § 994(a)(2)(C) (vesting this authority in the Sentencing Commission). This assumption cannot be reconciled with the statute or with *Dillon*.  The ability of a court to make an "extraordinary and compelling reason" finding is separate from the statutory requirement that any reduction be "consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).  Interpreting a companion provision, the Supreme Court has squarely held that the policy statements therefore take precedence.  *See Dillon*, 560 U.S. at 826–27 (noting that the statute "requires the court to follow the Commission's instructions . . . to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized").  Thus, Congress left the task of defining the policy applications of § 3582(c) to the Sentencing Commission, not the judiciary.

Courts have concluded that they lack authority to "update" the policy statement themselves, recognizing that "[i]f the policy statement needs tweaking in light of Section 603(b), that tweaking must be accomplished by the Commission, not by the courts."  *Lynn*, 2019 WL 3805349, at *4.  Unless and until the Sentencing Commission adopts a policy statement allowing *courts*—not just the BOP—to adopt compassionate release justifications beyond those

contemplated in subdivisions (A)–(C), this Court lacks authority to do so by fiat.  *See United States v. Shields*, No. 12-CR-410-BLF-1, 2019 WL 2359231, at *4 (N.D. Cal. June 4, 2019), *reconsideration denied*, 2019 WL 2645028 (N.D. Cal. June 27, 2019) (finding no "authority for the proposition that the Court may disregard guidance provided by the Sentencing Commission where it appears that such guidance has not kept pace with statutory amendments"); *United States v. Overcash*, No. 3:15-CR-263-FDW-1, 2019 WL 1472104, at *2 (W.D.N.C. Apr. 3, 2019) (observing that § 1B1.13 cannot be disregarded simply because it has yet to be revised and finding that defendant failed to demonstrate how the policy statement addressing "extraordinary and compelling" reasons conflicts with the First Step Act's amendments to § 3582(c)(1)(A)).

Redd does not claim to fall into any of the categories set forth in subdivisions (A)–(C), which "form the heartland of compassionate release cases."  *United States v. Gonzales*, No. 05-CR-561-XR, 2019 WL 5102742, at *3 (W.D. Tex. Oct. 10, 2019).  Accordingly, he is precluded from obtaining the relief he seeks unless the BOP—not this Court—determines that the reasons he has put forth for compassionate release are "extraordinary and compelling."  Given that no such determination has been made, Redd's motion must be denied.

## II.    REDD HAS FAILED TO DEMONSTRATE AN "EXTRAORDINARY AND COMPELLING" REASON FOR EARLY RELEASE

In the event that the Court agrees with Redd that it is not bound by the language in application note 1 giving the BOP the power to determine what constitutes an "extraordinary and compelling" reason under subdivision (D), the Court will have to decide whether the reasons proffered by Redd are "extraordinary and compelling."  As previously mentioned, Congress has declined to define that term.  Alternative authorities—including the Guidelines, relevant legislative history, and case law—make clear that "extraordinary and compelling" reasons are significant changes in a defendant's personal circumstances over the course of his incarceration,

not ameliorative changes to statutory penalties or regrets following withdrawal from a plea

bargain.  Thus, Redd has failed to show that he is entitled to early release.

### A.    Compassionate Release Is Reserved For Prisoners Whose Personal Circumstances Have Changed Dramatically

Consistent with Congressional understanding since the inception of compassionate

release, the Sentencing Commission has enumerated three "extraordinary and compelling"

justifications for relief under § 3582(c)(1)(A): a serious medical condition; old age coupled with

deteriorating health; and sole caregiver status.  U.S.S.G. § 1B1.13, app. note 1(A)–(C).  Each of

these reasons constitutes a *change* in the defendant's *personal* circumstances, not something

static that occurred long ago (such as a decision to back out of a plea agreement) or a change in

law that affects only offenders who have yet to be sentenced (such as Congress's decision to

reduce statutory penalties prospectively).  Although § 1B1.13 includes the open-ended

subdivision (D) provision, there is no basis to construe it so broadly as to cover Redd's asserted

grounds here.  As a matter of textual interpretation, the well-established canons of *ejusdem*

*generis* and *noscitur a sociis* cut in precisely the opposite direction.  *See, e.g.*, *Yates v. United*

*States*, 135 S. Ct. 1074, 1086 (2015) ("Where general words follow specific words in a statutory

enumeration, the general words are usually construed to embrace only objects similar in nature to

those objects enumerated by the preceding specific words." (alterations and internal quotation

marks omitted)).  Grounds like those asserted by Redd here—favorable changes in the law that

explicitly do not apply to him or a lengthy sentence imposed after withdrawal from a more

favorable plea agreement—are categorically unlike the changed circumstances and humanitarian

considerations of health, age, and family codified in the Sentencing Commission's policy

statement.

The legislative history confirms this understanding.  In 1983, during the lead-up to passage of the compassionate release provisions, the Senate Judiciary Committee stated that "there may be unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by *changed circumstances*."  S. Rep. No. 98-225, at 55 (emphasis added).  The Committee went on to say that "[t]hese would include cases of severe illness, [and] cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence . . . ."  *Id.*  By specifically identifying "severe illness" as an "extraordinary and compelling" reason that might warrant a sentence reduction, the Committee indicated that the "changed circumstances" it was contemplating were changes to the defendant's personal circumstances.

Since enactment of the First Step Act, myriad district courts have reviewed motions for compassionate release filed by defendants.  In so doing, these courts have "universally turned to U.S.S.G. § 1B1.13 to provide guidance on the 'extraordinary and compelling reasons' that may warrant a sentencing reduction."  *United States v. McGraw*, No. 2:02-cr-00018-LJM-CMM, 2019 WL 2059488, at *2 (S.D. Ind. May 9, 2019).  Most cases appear to address motions based on medical conditions, and reviewing courts have emphasized that even in that context compassionate release "is an extraordinary and rare event."  *White*, 378 F. Supp. 3d at 787; *see also United States v. Willis*, No. 15-cr-3764 (WJ), 2019 WL 2403192, at *3 (D.N.M. June 7, 2019) (collecting cases).  Consistent with the narrow view of "extraordinary and compelling" reasons expressed in the legislative history and the Guidelines, the few courts to address non-medical reasons have almost uniformly denied relief.  *See, e.g.*, *Lynn*, 2019 WL 3805349, at *4 (holding that even if the court had authority to decide what constitutes "extraordinary and compelling" under subdivision (D), defendant's proffered reason—that he "forfeit[ed] the right

12

to appeal his conviction and life sentence by choosing to escape federal custody while his appeal was pending"—would fall well short); *United States v. Fox*, No. 2:14-cr-03-DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) (rejecting as "extraordinary and compelling" reasons "the unfairness of so many changes to the Guidelines that have passed [defendant] by—reduced sentences for drug dealers; reduced Guidelines for financial crimes that were not made retroactive so as to affect him; more flexibility in non-Guideline sentencing practices in crimes that, like his, start with a low base offense level and add significant loss enhancements; apparent leniency for high profile white-collar defendants like Paul Manafort; and so on"); *Overcash*, 2019 WL 1472104, at *2 (finding that defendant's "desire to spend the remainder of his sentence at home . . . [was] not an extraordinary or compelling circumstance"); *Shields*, 2019 WL 2359231, at *5 (ruling that defendant's need to supervise a seriously ill child, when his spouse and adult children worked full-time, did not "rise to the level of 'extraordinary or compelling'"); *cf. United States v. Handerhan*, No. 19-1904, 2019 WL 4898675, at *2 (3d Cir. Oct. 4, 2019) ("[W]e question whether an alleged sentencing error that was correctible in prior proceedings could ever be an 'extraordinary and compelling reason' for release under § 3582(c)(1)(A)(i).").

The only outlier to these decisions, *United States v. Cantu*, No. 1:05-CR-458, 2019 WL 2498923 (S.D. Tex. June 17, 2019), figures prominently in Redd's brief. But it hardly aids his quest to expand the traditional understanding of what qualifies as an "extraordinary and compelling" reason for compassionate release, given that the defendant in that case appears to have based his request for early release exclusively on his age. *Id.* at *2. Moreover, in *Cantu*, unlike here, the government did not oppose the defendant spending the remainder of his prison term in home confinement. *Id.* at *5. In light of the government's non-opposition, not granting the defendant relief, the court found, would have irreparably harmed him and produced an

injustice.  *Id.*  But the court itself acknowledged that its "determination in this case is narrow and unlikely to have far-reaching implications, as Government non-opposition is both the touchstone of the determination and rare."  *Id.*

At a minimum, "other" "extraordinary and compelling" reasons under subdivision (D), to the extent that courts even get to decide what they are, "should be comparable or analogous to what the Commission has already articulated as criteria for compassionate release."  *Fox*, 2019 WL 3046086, at *3.  Those reasons, as stated, are confined to medical condition, age, and family circumstances, *see* U.S.S.G. § 1B1.13, app. note 1, none of which applies here.

**B.      A Change in Statutory Penalties Is Not an "Extraordinary and Compelling" Reason for a Sentence Reduction**

Redd asserts, as his principal basis for a sentence reduction, that he is serving a longer sentence than he would receive if he were sentenced for the same crimes today.  That is because, as noted above, the First Step Act has ended the practice of "stacking" mandatory minimum sentences for "second or subsequent" § 924(c) convictions in the same case in which the first such conviction is obtained.  Congress explicitly declined to make this statutory change retroactive to already-sentenced defendants.  Nevertheless, Redd asserts that Congress meant all along not to subject offenders to onerous sentences like his because the section of the First Step Act effectuating this change was titled "Clarification of Section 924(c)."  "That fact alone," he sweepingly concludes, "constitutes an extraordinary and compelling basis for a reduction of sentence."  Dkt. No. 300 at 13.  Not so.

As an initial matter, Redd reads too much into a single word, "Clarification," in the subtitle of a piece of legislation, which simply "cannot limit the plain meaning of the [legislation's] text."  *Bhd. of R.R. Trainmen v. Bal. & Ohio R.R. Co.*, 331 U.S. 519, 529 (1947).  Moreover, the action of the 115th Congress in 2018 at most says what that Congress thought

about the advisability of stacking mandatory minimums; it does not purport to say—nor could it—what an earlier Congress intended by its legislation. *Cf. South Dakota v. Yankton Sioux Tribe*, 522 U.S. 329, 355 (1998) ("We have often observed . . . that 'the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one.'" (quoting *United States v. Phila. Nat'l Bank*, 374 U.S. 321, 348-349 (1963))).

In addition, while Redd professes to have divined legislative intent, asserting that "Congress never intended to permit . . . the excessive punishment [he] received in this case," Dkt. No. 300 at 17, the historical record belies his claim. In *Deal v. United States*, 508 U.S. 129 (1993), the Supreme Court held that findings of guilt on multiple § 924(c) counts within a single indictment constitute "second or subsequent conviction[s]" for purpose of the statutory sentence enhancement found in § 924(c)(1)(C). *Id.* at 135. Five years later, Congress amended § 924(c) to "throttle [the] criminal use of guns" by *increasing* the minimum sentence for second or subsequent convictions from at least 20 to at least 25 years per conviction. Criminal Use of Guns Act, Pub. L. No. 105-386, 112 Stat. 3469 (Nov. 13, 1998). Courts presume that Congress is aware of existing law—including judicial interpretations of statutes—when it passes legislation. *See Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990); *United States v. Blankenship*, 846 F.3d 663, 674 (4th Cir. 2017). While Congress in 1998 could have abrogated *Deal* with its statutory amendment, it did not do so.

Redd would thus have this Court believe that Congress never intended even to allow courts to stack mandatory sentences under § 924(c)(1)(C) yet, following *Deal* and the imposition of sentences in countless cases thereafter, waited for more than 25 years to make clear its intent and, along the way, actually made more severe the penalties for incurring second or subsequent convictions under the statute. Simply put, that dog won't hunt.

15

Even more fundamentally, Redd's asserted basis for compassionate relief fails because it represents an attempted end run around Congress that the Court has no authority to sanction. Under the general saving statute, a law—like the First Step Act—that reduces statutory penalties for an offense presumptively does not alter penalties incurred before the new law took effect.  1 U.S.C. § 109[4]; *see also United States v. Bullard*, 645 F.3d 237, 248 (4th Cir. 2011) ("This rule fully applies in the sentencing context and bars 'application of ameliorative criminal sentencing laws repealing harsher ones in force at the time of the commission of an offense,' absent an express statement that the law is intended to be applied retroactively." (quoting *Warden, Lewisburg Penitentiary v. Marrero*, 417 U.S. 653, 661 (1974))).  A statute may overcome this "time-honored" default rule, *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 946 (1997), but only expressly or by clear implication, *see Dorsey v. United States*, 567 U.S. 260, 274 (2012).

Redd offers no evidence that Congress intended the First Step Act to apply to defendants who had been sentenced prior to the date of the Act's enactment.  Nor could he.  After all, Congress elected—in unambiguous terms—to limit the retroactivity of section 403(a) to cases where, as of December 21, 2018, no sentence had been imposed.[5]  It would define absurdity to

---

[4] Although § 109 specifically refers only to repealed statutes, it also applies to statutes changed by amendment.  *See Korshin v. C.I.R.*, 91 F.3d 670, 673 n.5 (4th Cir. 1996).

[5] The legislative history confirms that section 403(a) does not apply retroactively to defendants who were sentenced before the First Step Act's enactment.  On December 19, 2018, two days before the First Step Act was signed into law, Senator Grassley, one of the bill's sponsors in the Senate, read several letters from law enforcement organizations supporting the Act and its sentencing reforms, including a letter from the National Fraternal Order of Police that stressed, "[t]he FOP engaged with our allies on Capitol Hill to make sure these [sentencing] changes are prospective and would not, except in the case of the existing Fair Sentencing Act, be applied retroactively."  164 Cong. Rec. S7916-01 (Dec. 19, 2018) (Statement of Sen. Grassley).  Congressman Collins, one of the bill's sponsors in the House of Representatives, relayed concerns from the American Civil Liberties Union about the bill on December 20, 2018—the day before it was enacted.  He noted that while the First Step Act implemented vital sentencing

16

conclude that Congress unequivocally withheld retroactive effect of its revisions to

§ 924(c)(1)(C) but, in the same piece of legislation, permitted defendants sentenced decades

earlier to reap the benefits of those revisions via the severely restricted avenue of compassionate

release.  What is more, countenancing Redd's position would impermissibly open the proverbial

floodgates, allowing any defendant sentenced under an old statutory regime to seek early release

under subdivision (D).

Finally, Redd's argument fundamentally rests on the idea that a purported sentencing

disparity constitutes an "extraordinary and compelling" reason.  But this logic conflates the steps

established by the Supreme Court in *Dillon*.  Disparity is a sentencing factor under § 3553(a),

which the Supreme Court ruled was separate from and subsidiary to the necessary conclusion

that the reduction was consistent with the Commission's policy statements.  *See Dillon*, 560 U.S.

at 827 (holding that consideration of the § 3553(a) factors was "appropriate only at the second

step of this circumscribed inquiry," *i.e.*, *after* consideration of the policy statements).  Permitting

defendants like Redd to raise disparity as the sole, independent basis for an "extraordinary and

compelling" reason—at least where the Sentencing Commission has nowhere discussed that

consideration—thus contravenes Supreme Court precedent on the proper methods of analysis

under § 3582(c).

While Redd undoubtedly feels aggrieved by the fact that somebody sentenced today for

the same crimes he committed nearly a generation ago would receive a shorter sentence,

"frustration over the unfairness he perceives in others getting sentencing benefits while he does

---

reforms, the bill did not include retroactivity for those reforms "besides the long-awaited
retroactivity for the Fair Sentencing Act of 2010."  164 Cong. Rec. H10396-02 (Dec. 20, 2018)
(Statement of Rep. Collins).  He also observed that several thousand prisoners would not benefit
from the reforms "without retroactive application of . . . the change to the 924(c) provisions
. . . ."  *Id.*

not" furnishes no grounds for compassionate release. *Fox*, 2019 WL 3046086, at *3. Indeed, such frustration "is beyond the province of this court to resolve." *United States v. Augustine*, 712 F.3d 1290, 1295 (9th Cir. 2013). That prerogative rests exclusively with Congress.[6]

### C. Rejecting a Plea Offer Is Not an "Extraordinary and Compelling" Reason for a Sentence Reduction

Although he does not explicitly cite it as a reason for compassionate release, Redd points to the perceived inequity of the 20 years in prison he ultimately received beyond what he would have served had he not withdrawn his plea of guilty as to Count 7 and exercised his right to trial. *See* Dkt. No. 300 at 6. Redd's regret is understandable, but it clearly is not a reason for a sentence reduction. Not only is it far afield of "extraordinary and compelling" reasons under § 3582(c)(1)(A), which as previously mentioned are grounded in changes to a defendant's personal circumstances, but, if countenanced, it would eviscerate the enforceability of plea bargaining in which the government has a strong interest and upon which the criminal justice system relies. *See Corbitt v. New Jersey*, 439 U.S. 212, 222 (1978) ("[The Supreme Court has] unequivocally recognized the [government's] legitimate interest in encouraging the entry of guilty pleas and in facilitating plea bargaining, a process mutually beneficial to both the defendant and the [government]."). Thus, to the extent that Redd argues that the roughly 20-year delta between the sentence that the Court imposed and the sentence that he would have received had he not withdrawn from his agreement constitutes a basis for relief, the Court should reject it.

---

[6] Congress knows well how to rectify disparities borne of its line-drawing. In fact, the First Step Act itself does so. Specifically, section 404 of the Act makes retroactive the portions of the Fair Sentencing Act of 2010 that raised the threshold quantities triggering different statutory penalties for certain offenses involving crack cocaine. *See* 132 Stat. at 5222.

D.      In the Absence of an "Extraordinary and Compelling" Reason for a Sentence Reduction, Mercy Alone Is Not a Basis for Compassionate Release

As a last-ditch effort to rescue his motion, Redd makes the case that he is deserving of mercy. But federal district courts have no clemency powers. *See Harbison v. Bell*, 556 U.S. 180, 187 (2009) ("Federal clemency is exclusively executive: Only the President has the power to grant clemency for offenses under federal law."). The First Step Act did not—and could not—change that.

## III.    COMPASSIONATE RELEASE IS NOT WARRANTED

Even if Redd could succeed in demonstrating eligibility for compassionate release, such relief would not be merited in light of the nature and circumstances of his convictions as well as his history and characteristics.

As previously noted, compassionate release is only appropriate where the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). That statute instructs the court to consider several factors, among them whether the underlying offense is a crime of violence, whether the offense involved a firearm, and the defendant's criminal record. Here, Redd's offenses were indisputably crimes of violence and involved the use of firearms. *See United States v. McNeal*, 818 F.3d 141, 157 (4th Cir. 2016). Additionally, at the time he was apprehended for the crimes he committed in this district, Redd had prior convictions for burglary and forgery as well as an outstanding warrant from the Court of Common Pleas in Philadelphia, Pennsylvania, for violating his probation there. Based on these facts, Redd presents a risk of endangering the safety of others if he were to be released early.[7]

---

[7] Redd, of course, maintains that he is not a danger to the community. In support of that assertion, he notes that he "has participated in over 200 hours worth of programs while incarcerated." Dkt. No. 300 at 14. That Redd has completed, on average, approximately 10

Beyond Redd's dangerousness, the Court would also have to consider whether the § 3553(a) factors counsel in favor of a sentence reduction.  *See* 18 U.S.C. § 3582(c)(1)(A).  Naturally, Redd argues that they do, underscoring the magnitude of his rehabilitation and contending that the need to avoid unwarranted sentence disparities, codified at § 3553(a)(6), militates strongly in favor of early release.  Regarding the latter point, Redd highlights the "glaring disparity between [his] sentence and those of defendants that have committed similar crimes post the enactment of the First Step Act, merely because of timing of the offense committed."  Dkt. No. 300 at 16.[8]  To be sure, a defendant in Redd's precise circumstances would face less mandatory time if sentenced today.  This disparity is not, however, "unwarranted."  18 U.S.C. § 3553(a)(6).  Rather, it is merely the same consequence that follows every ameliorative amendment to the Guidelines or the United States Code that the Sentencing Commission or Congress declines to make retroactive.  That might well be exasperating for defendants like Redd, but it does not justify their early release from incarceration.

## CONCLUSION

For the reasons stated, the government respectfully asks the Court to deny Redd's motion.

---

hours of prison programs per year over the course of his incarceration is laudable, but it says next to nothing about his dangerousness.  Redd also points to an offer of employment that was extended to him should he be released.  But that job offer is nearly three years old, and no evidence that it has been renewed has been presented, thus diminishing its utility.

[8] For the proposition that a defendant's rehabilitation and the need to avoid unwarranted sentence disparities can support resentencing under § 3582(c)(1)(A)(i), Redd cites *United States v. Cantu-Rivera*, No. H-89-204, 2019 WL 2578272, at *2 (S.D. Tex. June 24, 2019).  But *Cantu-Rivera* is inapposite.  There, the court addressed sentence disparities among defendants *in the same case*, *see id.*, not between an actual defendant and hypothetical defendants sentenced in a post-First Step Act world.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By:              /s/
          Alexander E. Blanchard
          Assistant United States Attorney
          United States Attorney's Office
          2100 Jamieson Avenue
          Alexandria, Virginia 22314
          Tel: (703) 299-3818
          Fax: (703) 299-3980
          alexander.blanchard@usdoj.gov