IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Case No. 1:97-cr-00006-AJT |
| | ) | |
| DERRICK VINCENT REDD, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**

In late 1996, Defendant Derrick Vincent Redd robbed three banks and aborted an attempt to rob a fourth. Three of these incidents occurred on one day, within a time span of approximately 45 minutes. He obtained a total of approximately $5,000. Mr. Redd was charged with seven offenses, four based on the bank robberies themselves and three based on his possessing a gun in connection with the three banks he actually robbed. After pleading guilty to or being found guilty on all charges, Mr. Redd was sentenced to total of 603 months of imprisonment, or 50.25 years, consisting of 63 months for the robberies, the then pre-*Booker* mandatory guideline sentence and 540 months, or 45 years, for his carrying a gun during the three robberies, the then-applicable mandatory sentence imposed under 18 U.S.C. § 924(c). He began serving that sentence in 1997 at age 41 and now, at 64 years old, has served over 23 years of that sentence. With good time credits, he will be released from prison in 2040 at age 84, after serving almost 43 years.

In December 2018, Congress enacted THE FIRST STEP ACT of 2018, Publ. L. No. 115-291, 132 Stat. 5194 ("the First Step Act"). Under the First Step Act, the mandatory minimum sentences for convictions under 18 U.S.C. § 924(c) were reduced for sentences imposed after the

passage of the First Step Act. Had Mr. Redd been sentenced under these reduced penalties, he would have received a sentence of fifteen, as opposed to 45, years with respect to his three § 924(c) convictions. The First Step Act also authorized courts, without the Bureau of Prison's motion, as previously required, to reduce sentences for "extraordinary and compelling reasons" once a defendant exhausts his administrative appeals to the Bureau of Prisons ("BOP"). On August 16, 2019, Mr. Redd applied to the warden of his facility for a sentence reduction based on extraordinary and compelling circumstances; and he has exhausted his administrative remedies, as required under the First Step Act.[1]

On October 9, 2019, Mr. Redd filed in this Court a Notice of Motion by Defendant Derek Vincent Redd To Reduce Sentence Pursuant To 18 U.S.C. §3582(c)(1)(A)(i) [Doc. 299] ("the Motion"), together with a supporting Memorandum of Law [Doc. 300], by which he seeks, pursuant to the First Step Act, to reduce his 603-month sentence to time served based on "extraordinary and compelling reasons." [Doc. 299] (the "Motion"). The Government objects to the Motion on multiple grounds. For the reasons discussed below, the Motion is **GRANTED**.

## I. BACKGROUND

### A.

At approximately 6:50 p.m. on November 8, 1996, Mr. Redd entered a Virginia First Savings Bank located in Lake Ridge, Virginia where he approached a bank teller and instructed her, with a gun in his hand, to give him money. [Presentence Investigation Report dated

---

[1] The warden did not act on Mr. Redd's application within the designated thirty day period. However, on October 17, 2019, eight days after Mr. Redd properly-filed the Motion and over two months, the acting warden at Mr. Redd's facility denied his request on the grounds that his "non-medical circumstances are not extraordinary or compelling . . . [and] your release would minimize the severity of your offenses." [Doc. 311, Ex. 1]. Mr. Redd has also requested, on two separate occasions, that the United States Attorney for the Eastern District of Virginia vacate at least one of his § 924(c) convictions in its discretion, as it is authorized to do under Federal Rule of Criminal Procedure 48. The United States Attorney denied those requests.

2

December 12, 1997 ("PSR") at 3]. It is unknown precisely how much money Mr. Redd stole on this occasion.

A little over one month later, on December 10, 1996, at approximately 11:00 a.m., Mr. Redd entered a First Virginia Bank in Woodbridge, Virginia, approached the teller, and presented a note demanding money. He displayed a black revolver and gave the teller a brown plastic bag in which to place the money. The teller then gave Mr. Redd approximately $1,497.00, along with a red dye-pack. Upon receiving the cash, Mr. Redd left the bank. Shortly after leaving the premises, the dye-pack activated. PSR at 3.

Fifteen minutes later that same day, at approximately 11:15 a.m., Mr. Redd entered a Crestar Bank, also in Woodbridge, Virginia. While there, he approached the teller, placing a dark glove, a tan plastic bag, and a note on the teller counter while keeping his right hand in his pocket in a manner reported to cause the teller to believe he may have a gun. However, before the teller could act, Mr. Redd left the bank. PSR at 3-4.

Fifteen minutes later, at approximately 11:30 a.m., Mr. Redd entered another Virginia First Savings Bank branch located in Woodbridge, Virginia, approached a teller at the bank, displayed a black revolver, and placed a threatening note along with a dark glove on the teller counter that demanded money. The teller then placed approximately $2,104.00 in a brown plastic bag and handed the bag to Mr. Redd, who then exited the premises. PSR at 4. In total, the impacted banks lost approximately $5,465.00 as a result of Mr. Redd's robberies. PSR at 5. No one was physically harmed.

Two days later, on December 12, 1996, the Prince William County Police Department received information that the alleged robber was Mr. Redd, which the police later verified through bank surveillance cameras. PSR at 4. On the same day, the police executed a search

3

warrant on Mr. Redd's residence in Lake Ridge, Virginia. *Id*. at 4-5. On January 7, 1997, Mr. Redd was indicted in connection with this string of robberies in a seven-count indictment, which charged: (1) three counts of bank robbery in violation of 18 U.S.C. §§ 2113(a) and (d); (2) one count of attempted bank robbery in violation of 18 U.S.C. § 2113(a); and (3) three counts of using a firearm during a crime of violence in violation of 18 U.S.C. § 924(c). [Doc. 7].

Pursuant to a Plea Agreement [Doc. 24], Mr. Redd pled guilty to one count of bank robbery and two of the three § 924(c) counts, with the Government dropping the remaining charges and recommending a sentence of a 340 months, or 28.33 years, consisting of 40 months on the one bank robbery count, and a total of 25 years on the two § 924(c) counts, five years for the first and 20 years for the second. However, on August 8, 1997, before sentencing and over the Government's objection, this Court permitted Mr. Redd to withdraw his guilty plea as to one of the two § 924(c) counts, while retaining his plea as to the one bank robbery count and the one § 924(c) count. On August 22, 1997, this Court sentenced Mr. Redd to 40 months with respect to the single bank robbery count and 60 months (a mandatory minimum) with respect to the one § 924(c) count, to run consecutively, for a total of 100 months, or 8.33 years. [Doc. 41].

The Government then proceeded to trial on the (remaining) five counts initially charged in Mr. Redd's indictment. On November 4, 1997, after a one-day jury trial, a jury found Mr. Redd guilty on all five counts [Doc. 58], and on December 12, 1997, Mr. Redd was sentenced to 63 months with respect to the remaining two bank robbery counts and the one attempted robbery count (the low end of the then mandatory guideline sentence), to run concurrently with the previously imposed 40 month sentence on the one bank robbery count; and 240 months on each of the two remaining § 924(c) counts, to run consecutively to the previously-imposed 60 month §

924(c) sentence and also to the sentences imposed on each of the other counts [Doc. 68]. In total, Mr. Redd was sentenced to 603 months. *Id.*

In December 2018, Congress passed the First Step Act. On October 9, 2019, Mr. Redd, through counsel, filed the Motion.[2]

The First Step Act amended 18 U.S.C. § 924(c)(1)(C) such that the enhanced mandatory minimum penalty for a second or any subsequent § 924(c) conviction, 20 years at the time of Mr. Redd's sentencing, but now 25 years,[3] applies only when an offender's first conviction under § 924(c) was "final" when the subsequent violation was committed. First Step Act § 403(a) (as codified at 18 U.S.C. § 924(c)(1)(C)). As a practical matter, an offender now faces a mandatory five year consecutive sentence, rather than an enhanced 20 or 25 year sentence, for a second or subsequent § 924(c) conviction when multiple § 924(c) offenses are charged in the *same* indictment without a previous final § 924(c) conviction. However, the First Step Act did not make this change retroactive; and the amendment does not automatically reduce the sentence imposed on defendants, like Mr. Redd, who were sentenced before December 21, 2018, the First Step Act's effective date.[4] Rather, the First Step Act increased the opportunity for defendants to obtain a reduction in their sentence based on an individualized consideration under designated criteria.

---

[2] On November 1, 2019, the Government responded to the Motion [Doc. 311] and on November 12, 2019, Mr. Redd filed a reply [Doc. 315]. On November 21, 2019, the Court held a hearing on the Motion [Doc. 317].
[3] *See* Act of Nov. 13, 1998, Pub. L. No. 105-386, 112 Stat. 3469.
[4] *See* First Step Act § 403(b) ("This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment."); *see also United States v. Melvin*, 777 F. App'x 652, 653 (4th Cir. 2019) (per curiam) ("Although the First Step Act altered the circumstances under which 18 U.S.C. § 924(c) offenses are subject to enhanced mandatory minimum sentences . . . Congress expressly limited the retroactivity of that provision to offenses for which sentence was not yet imposed as of the First Step Act's date of enactment . . . .") (citations omitted).

Under a section titled "Increasing the Use and Transparency of Compassionate Release," the First Step Act separately amended § 3582(c)(1)(A) to allow courts, in their discretion, to modify criminal sentences upon a motion filed directly by a defendant, without the need for a motion by the Director of the BOP, as previously required, provided the defendant has either "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs earlier. First Step Act § 603(b) (codified at 18 U.S.C. § 3582(c)(1)(A)). Once a defendant satisfies this exhaustion requirement, a court may reduce a sentence if it finds that "extraordinary and compelling reasons warrant such a reduction," "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," and if the applicable 18 U.S.C. § 3553(a) factors merit a reduction. 18 U.S.C. § 3582(c)(1)(A).[5] *See Dillon v. United States*, 560 U.S. 817, 826-27 (2010) ("[T]he statute [§ 3582(c)] thus establishes a two-step inquiry. A court must first determine that a reduction is consistent with [applicable policy statements] before it may consider whether the authorized reduction is warranted, either in whole or in part, according to the factors set forth in § 3553(a).").

## II. ANALYSIS

Mr. Redd requests relief under § 18 U.S.C. § 3582(c)(1)(A)(i) based on "extraordinary and compelling reasons."[6] Motion at 1. That requested relief requires the Court to consider (1)

---

[5] 18 U.S.C. § 3582(c)(1)(A)(ii) also authorizes a court to modify a term of imprisonment if "the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g) . . . ." Mr. Redd does not contend that his sentence should be reduced under this provision.

[6] 18 U.S.C. § 3582(c)(1)(A)(i) provides in pertinent part:

6

whether he has exhausted his administrative remedies; (2) if he has exhausted his administrative remedies, whether there are extraordinary and compelling reasons that warrant a reduction in his sentence; (3) if a warranted reduction exists, whether such a reduction is consistent with applicable policy statements of the Sentencing Commission; and (4) if so, what sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors.

**A.**

Mr. Redd has exhausted his administrative remedies and may seek relief in this Court under the First Step Act. On August 16, 2019, Mr. Redd submitted a request to the records office at his facility for a sentence reduction based on extraordinary and compelling circumstances with respect to his excessive term of imprisonment and his extensive rehabilitation while incarcerated. [Doc. 300 at 8]; *see also* [Doc. 301 ("Decl. of Ada Johnson"), Ex. 1]. The BOP did not act on Mr. Redd's request within thirty days and Mr. Redd therefore had standing to bring the Motion under § 3582(c)(1)(A) when he filed the Motion on October 9, 2019.

**B.**

Having exhausted his administrative remedies, as required, the Court must next consider whether there are "extraordinary and compelling reasons" that justify a reduction to Mr. Redd's current sentence.

---

The court may not modify a term of imprisonment once it has been imposed except that—(1) in any case—(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

The only Congressional or Sentencing Commission guidance concerning what would constitute extraordinary and compelling reasons are those specific grounds set forth in 18 U.S.C. § 3582(c)(1)(A)(ii), U.S.S.G. § 1B.13 cmt. n.1(A)-(C), the legislative instruction in 28 U.S.C. § 994(t) that a defendant's rehabilitation, standing alone, cannot be grounds for granting a reduction in sentence under § 3582(c), and the Sentencing Commission's statement that extraordinary and compelling reasons "need not have been unforeseen at the time of sentencing," U.S.S.G. § 1B1.13 cmt. n.2. However, these pronouncements do not define the universe of considerations; and neither the First Step Act nor any other Congressional or Sentencing Commission statements or enactments provide any significant guidance on what reasons, other than those specifically mentioned, may qualify as extraordinary and compelling.[7]

Mr. Redd does not assert that his circumstances are "extraordinary and compelling" based on any expressly-referenced substantive grounds in any statute or in the Sentencing Guidelines. Rather, Mr. Redd requests that the Court grant his request based on its determination that other reasons exist, as the Director of the BOP is authorized to determine under U.S.S.G. § 1B1.13. At its core, Mr. Redd's proffered reason is Congress' dramatic reduction under the First Step Act of the penalties he received on his three "stacked" § 924(c) convictions.

In assessing whether Mr. Redd has presented extraordinary and compelling reasons, the Court has initially and centrally considered the sentence he received relative to the sentence he would now receive for the same offense, whether and to what extent there is a disparity between the two sentences, and why that disparity exists. In that regard, the sentence Mr. Redd received was in large part attributable to the then available prosecutorial practice of "stacking" § 924(c)

---

[7] "Extraordinary" is defined as "going beyond what is usual, regular, or customary; or exception to a very marked extent," *Merriam-Webster Dictionary* (2019), available at https://www.merriam-webster.com/dictionary/extraordinary; and "compelling" is defined as "forceful; demanding attention; convincing," *id*., available at https://www.merriam-webster.com/dictionary/compelling.

charges in the same indictment without a previous § 924(c) conviction, which resulted in a mandatory minimum sentence of 540 months for his three § 924(c) convictions, to run consecutive to his 63 month sentence for the bank robberies. As mentioned above, that sentence is 30 years, or three times longer, than what Congress has now deemed an adequate punishment for comparable § 924(c) conduct;[8] and it is 20 years longer than what the Government at the time thought was an adequate punishment under § 924(c), as reflected in its plea offer. That sentence is also decades longer than sentences imposed on average for offenses at least as, if not more, serious than his offenses.[9] Given that he was sentenced pre-*Booker*, even his sentence for the robberies themselves could be lower today than the 63 months he received. *See Dean v. United States*, 137 S. Ct. 1170, 1177 (2017) (holding that, post-*Booker*, "nothing in [§ 924(c)] prevents a sentencing court from considering a mandatory minimum under § 924(c) when calculating an appropriate sentence for the predicate offense," which can justify a below-guidelines sentence).

There is no doubt that there is a gross disparity between the sentence Mr. Redd received and the sentence he would have received after the First Step Act. *See United States v. Urkevich*, 2019 U.S. Dist. LEXIS 197408, at *8, 2019 WL 6037391 (D. Neb. Nov. 14, 2019) ("A reduction

---

[8] Because these consecutive § 924(c) sentences are mandated by statute, the guideline sentence today for Mr. Redd's § 924(c) offenses would similarly be limited to those statutory limits, *see* U.S.S.G. § 5G1.1, and therefore be substantially lower than his guideline sentence in 1997, a development that has been recognized in legislative history as a potentially available basis for relief. *See* S. Rep. No. 98-225, at 55-56 (Aug. 4, 1983) ("The [Senate Judiciary] Committee believes that there may be unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances. These would include cases of severe illness, cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence, *and some cases in which the sentencing guidelines for the offense of which the defend[ant] was convicted have been later amended to provide a shorter term of imprisonment*.") (emphasis added).

[9] In FY 1997, the average sentence imposed for defendants (with criminal history Category II) for murder was 190 months; for kidnapping, 186 months; and for manslaughter, 38 months. *See* United States Sentencing Commission, *Sourcebook of Federal Sentencing Statistics*, *Table 14: Average Length of Imprisonment for Offenders in Each Criminal History Category by Primary Offense Category, Fiscal Year 1997*, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/1997/TABLE14_0.pdf.

9

in [defendant's] sentence is warranted by extraordinary and compelling reasons, specifically the injustice of facing a term of incarceration forty years longer than Congress now deems warranted for the crimes committed."). That disparity is primarily the result of Congress' conclusion that sentences like Mr. Redd's are unfair and unnecessary, in effect, a legislative rejection of the need to impose sentences under § 924(c), as originally enacted,[10] as well as a legislative declaration of what level of punishment is adequate. These are, the Court finds, extraordinary and compelling developments that constitute extraordinary and compelling reasons that warrant a reduction to Mr. Redd's sentence of incarceration.

## C.

Having determined that there are extraordinary and compelling reasons that warrant a reduction in sentence, the Court next considers whether such a reduction is "consistent with applicable policy statements." 18 U.S.C. § 3582(c)(1)(A).

Congress directed the Sentencing Commission to promulgate policy statements "that describe what should be considered extraordinary and compelling reasons for a sentence reduction [under 18 U.S.C. § 3582(C)(1)(A)], including the criteria to be applied and a list of specific examples[,]" restricting the Commission only to the extent that "rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason. *See* 28 U.S.C. §§ 994(a)(2)(C) and (t). The Sentencing Commission did so in U.S.S.G. § 1B1.13; and the Government contends that in assessing whether there exists a qualifying "extraordinary and compelling reason," the Court is limited to determining whether there exist one of the three specific circumstances that qualify as "extraordinary and compelling" under U.S.S.G. § 1B1.13

---

[10] In *Deal v. United States,* 508 U.S. 129, 136-37 (1993), the Supreme Court held that the text of § 924(c) required the imposition of enhanced consecutive sentences on multiple § 924(c) convictions obtained in a single indictment, even where there was no prior, final § 924(c) conviction, as in Mr. Redd's case.

cmt. n.1(A)-(C) (*viz.*, a defendant's medical condition, health and age, or family exigency) and may not rely on the catch-all category, located in Application Note 1(D), labeled "Other Reasons," which permits a court to modify a defendant's sentence if, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)," *id.*, cmt. n.1(D). [Doc. 311 at 7-10]. Since Mr. Redd does not rely on reasons set forth in subdivisions (A)-(C) and the BOP Director has not determined under subdivision (D) that there are "other reasons," the Government argues that the Court is precluded from finding that there exists an extraordinary and compelling reason "consistent with the applicable policy statement." *Id.* The Court disagrees with the Government's position.

First, the Court concludes, as other courts have and as the Government has essentially conceded in at least one case, that there does not currently exist, for the purposes of satisfying the First Step Act's "consistency" requirement, an "applicable policy statement."[11] The only possibly applicable policy statement with respect to such a reduction is U.S.S.G. § 1B1.13 (2018), which by its terms applies only to motions for compassionate release filed by the BOP Director, not motions filed by defendants. [12] Second, even were U.S.S.G. § 1B1.13 the

---

[11] *See, e.g.*, *United States v. Beck*, 2019 U.S. Dist. LEXIS 108542, 2019 WL 2716505, at *5 (M.D.N.C. June 28, 2019) ("There is no policy statement applicable to motions for compassionate release filed by defendants under the First Step Act."); *United States v. Cantu*, 2019 U.S. Dist. LEXIS 100923, at *9, 2019 WL 2498923 (S.D. Tex. June 17, 2019) (same); *United States v. Young*, 2020 U.S. Dist. LEXIS 37395, at * 6, 2020 WL 1047815 (M.D. Tenn. Mar. 4, 2020)("The government also concedes that, because the Sentencing Commission's policy statement 'has not been amended to reflect that, under the First Step Act, a defendant may now move for compassionate release after exhausting administrative remedies,' the existing policy statement, while providing 'helpful guidance,' 'is not ultimately conclusive given the statutory change.") (citations omitted).

[12] U.S.S.G. § 1B1.13 was enacted before the First Step Act and remains unamended since the passage of the First Step Act. In that regard, there are currently five vacancies on the Sentencing Commission and it does not have the requisite number of members to enact any conforming amendments to U.S.S.G. § 1B1.13. *See United States v. Handerhan*, 2019 U.S. Dist. LEXIS 55367, 2019 WL 1437903, at *1, n.4 (M.D. Pa. Apr. 1, 2019) (noting vacancies and need for four members to pass amendments to the Sentencing Guidelines). Nevertheless, at least one court has inferred that the Sentencing Commission would, in the wake of the First Step Act's amendments to § 3582, permit

applicable policy statement for the purpose of satisfying the consistency requirement, the Government's position fails to recognize and accommodate the effect the legislative amendments under the First Step Act have necessarily had on U.S.S.G. § 1B1.13.

The First Step was passed against the backdrop of a documented infrequency with which the BOP filed motions for a sentence reduction on behalf of defendants.[13] And while the First Step Act did preserve the BOP's role relative to a sentence reduction in certain limited respects,[14] it eliminated the BOP Director's role as the *exclusive* channel through which a sentence reduction could be considered by courts. Indeed, the First Step Act authorized courts to act independently of the BOP Director, upon a defendant's motion, once administrative remedies are exhausted, reflecting the First Step Act's legislative purpose and intent to expand the opportunity for a defendant to seek review (and potentially a reduction) of his or her sentence. In that regard, the First Step Act effectively amended U.S.S.G. § 1B1.13 by eliminating the requirement that a sentence reduction under § 3582(c)(1)(A) be "upon motion of the Director of Bureau of Prisons," as U.S.S.G. § 1B1.13 requires. For this reason, any assessment of whether a court acted "consistent" with U.S.S.G. § 1B1.13 based on reasons other than those specifically mentioned in Application Notes 1(A)-(C) must consider the First Step Act's effect on that policy statement, and Application Note 1(D) in particular. *See also* 18 U.S.C. § 3553(a)(5) (any "pertinent policy statement" is to be considered "subject to any amendments made to such policy

---

the use of Application Note 1(D) to reduce excessively long sentences without a determination by the BOP Director. *See Urkevich*, 2019 U.S. Dist. LEXIS 197408, at *7.

[13] *See Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (noting that until 2013, "only 24 inmates were released [on average] each year" under § 3582 on motion of the BOP, and between August 2013 and September 2014, that number increased to 83).

[14] For example, the BOP may still, on its own, raise motions for compassionate release on behalf of defendants, *see* 18 U.S.C. § 3582(c)(1)(A), and the BOP continues to be involved in determining whether a defendant, provided he or she meets other conditions, is "a danger to the safety of any other person or the community, as provided under section 3142(g)," *see* 18 U.S.C. § 3582(c)(1)(A)(ii).

statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into the amendments issued under section 994(p) of title 28."); *Mistretta v. United States*, 488 U.S. 361, 394 (1989) (Congress may "revoke or amend" any of the Commission's policy statements by statute at any time); *Stinson v. United States*, 508 U.S. 36, 38 (1993) ("We decide that commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline.").

Application Note 1(D)'s prefatory language, which requires a determination by the BOP Director, is, in substance, part and parcel of the eliminated requirement that relief must be sought by the BOP Director in the first instance, particularly since it would be unlikely that the BOP Director would determine that an extraordinary and compelling reason exists under Application Note 1(D) but then decline to file a motion for compassionate release based on that determination. For these reasons, whether a court's finding of a warranted sentence reduction based on "other reasons" would be consistent with U.S.S.G. § 1B1.13 should be assessed based on whether that finding would be consistent with those other reasons had they been presented to the Court by the BOP Director as the basis for relief.[15] Important in that regard is that any reason determined by the BOP Director to warrant a sentence reduction is, by virtue of the policy statement, automatically "consistent" with that applicable policy statement. *See* U.S.S.G. §

---

[15] This position is further supported by other pronouncements of the Sentencing Commission *before* the passage of the First Step Act, recognizing the ultimate role courts occupy relative to requests under § 3582. *See* U.S.S.G. § 1B1.13, cmt. n.4 ("The court is in a *unique position* to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction), after considering the factors set forth 18 U.S.C. § 3553(a) and the criteria set forth in this policy statement, such as the defendant's medical condition, the defendant's family circumstances, and whether the defendant is a danger to the safety of any other person or to the community.") (emphasis added); *See also* United States Sentencing Commission, *Amendments to the Sentencing Guidelines* 3, Apr. 28, 2016 (internal quotations omitted) (noting, pre-First Step Act, that "[w]hile only the Director of the Bureau of Prisons has the statutory authority to file a motion for compassionate release, the Commission finds that the court is in a unique position to assess whether the circumstances exist.").

1B1.13, cmt. n. 5 ("Any reduction made pursuant to a motion by the Director of the Bureau of Prisons for the reasons set forth in subdivisions (1) and (2) [of U.S.S.G. § 1B1.13] is consistent with this policy statement.").[16] Further, restricting the Court to those reasons set forth in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C), as the Government proposes, would effectively preserve to a large extent the BOP's role as the exclusive gatekeeper, which the First Step Act substantially eliminated, as discussed above.[17]

For the above reasons, the Court joins other courts[18] in concluding that a court may find, independent of any motion, determination or recommendation by the BOP Director, that extraordinary and compelling reasons exist based on facts and circumstances other than those set forth in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) and that the reasons it has determined in this case

---

[16] Reflective of the wide and sometimes anomalous discretion conferred upon the BOP Director regarding the grounds for compassionate release, without constraint by the "consistency" requirement, is 28 C.F.R. § 571.60 (limiting "extraordinary and compelling circumstances" to those circumstances not foreseen at the time of sentencing), which directly conflicts with U.S.S.G. § 1B1.13 n. 2 (permitting compassionate release for circumstances foreseeable at the time of sentencing).

[17] To the extent that there is any ambiguity in § 3582(c)(1)(A), particularly as to whether the Court must still wait on the BOP Director to determine "other reasons," the doctrine of lenity applies since § 3582(c)(1)(A) pertains to criminal penalties. *See United States v. Cutler*, 36 F.3d 406, 408 (4th Cir. 1994) (holding that rule of lenity may apply to ambiguities found in the Sentencing Guidelines); *United States v. Santos*, 553 U.S. 507, 514 (2008) (holding that where one possible interpretation of criminal statute is more "defendant-friendly" than the other, the "rule of lenity dictates that [the defendant-friendly option] should be adopted.").

[18] *See, e.g.*, *Young*, 2020 U.S. Dist. LEXIS 37395; *United States v. O'Bryan*, 2020 WL 869475 (D. Kan. Feb. 21, 2020); *United States v. Kepa Maumau,* No. 08-cr-758-TC-11, 2020 U.S. Dist. LEXIS 28392, 2020 WL 806121 (D. Utah Feb. 18, 2020); *Urkevich*, 2019 U.S. Dist. LEXIS 197408, at *7-9 (finding extraordinary and compelling circumstances to exist under the "other reasons" catch-all, absent a determination by the BOP); *United States v. Brown,* 2019 U.S. Dist. LEXIS 175424, at *2-10 (S.D. Iowa Oct. 8, 2019); *United States v. Fox*, 2019 U.S. Dist. LEXIS 115388, at *7 (D. Me. July 11, 2019) ("That deference to the BOP no longer makes sense now that the First Step Act has reduced the BOP's role . . . [and] I treat the previous BOP discretion to identify other extraordinary and compelling reasons as assigned now to the courts."); *United States v. Cantu-Rivera*, 2019 WL 2578272, at *2 n.1 (S.D. Tex. June 24, 2019); *Cantu*, 2019 U.S. Dist. LEXIS 100923, at *13-14 ("[T]he correct interpretation of § 3582(c)(1)(A)—based on the text, statutory history and structure, and consideration of Congress's ability to override any of the Commission's policy statements at any time, is that when a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant granting relief.") (citations omitted).

constitute extraordinary and compelling reasons warranting a sentence reduction satisfy any requirement for consistency with any applicable policy statement.

**D**.

Having found that there exists an extraordinary and compelling reason that warrants a sentence reduction and that such a reduction is consistent with any applicable policy statement, the Court must next "consider[] the factors set forth in section 3553(a) to the extent they are applicable" to determine whether a reduced sentence is appropriate and if so, what that sentence should be.

Based on the § 3553(a) factors, the Court has considered the record pertaining to (1) Mr. Redd's sentence relative to the nature and seriousness of his offense; (2) his personal history and characteristics; (3) the need for a sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (4) the need to afford adequate deterrence; (5) the need to protect the public from further crimes of the defendant; (6) the need to provide rehabilitative services; (7) the applicable guideline sentence; and (8) the need to avoid unwarranted sentencing disparities among defendants with similar records found guilty of similar conduct. *See* 18 U.S.C. § 3553(a)(1)-(6).[19]  Importantly, these considerations are to be assessed against the overarching principle that a sentence is to be sufficient, but not greater than necessary, for these purposes. 18 U.S.C. § 3553(a).

As to the nature and seriousness of his offenses relative to his sentence, Mr. Redd's offenses were undoubtedly serious, and his underlying offense conduct must be considered in connection with his prospects for recidivism and his level of dangerousness to the public, were he released.  But that underlying offense conduct must also be considered relative to the sentence

---

[19] By Order dated February 10, 2020 [Doc. 320], the Court ordered Mr. Redd to supplement the record updating the information filed with his Motion, which he did on March 11, 2020 [Doc. 326].

15

he received and any reduced sentence he would receive. Mr. Redd's already served 23 years has consumed a large part of his life and by any measure represents a very substantial punishment that reflects the seriousness of his offenses and the need for general or specific deterrence. It is also a period of time that promotes respect for the law and provides just punishment for his offenses.

As to his personal characteristics, it appears from the available Presentence Reports that Mr. Redd had a one point a promising future. A talented athlete, he attended college on an athletic scholarship until he injured himself and his life appears to have spiraled downward ever since. He has had bouts with alcohol and other substance abuse, all of which appear to no longer be a factor. Prior to his 1996 conduct, Mr. Redd had a criminal history, but a relatively minor, non-violent one, consisting of a 1978 conviction for burglary, criminal trespass, and criminal conspiracy, for which he received a term of probation; a 1988 conviction for forgery, based on falsifying his work attendance records, eight years before the robberies, for which he received a term of probation; and an outstanding probation violation with respect to his 1988 forgery conviction at the time of the robberies, which increased his criminal history for sentencing purposes from Category I to Category II. *See* PSR at 21-22. And as discussed below, while incarcerated, he has demonstrated personal characteristics that reflect positively on him and substantial rehabilitation.

With respect to the need to avoid unwarranted sentencing disparities, not only is Mr. Redd's sentence grossly disparate relative to what a defendant today would receive for comparable conduct, it is now grossly disparate to the reduced § 924(c) sentence received

pursuant to the First Step Act by an increasing number of defendants who were sentenced before the passage of the First Step Act.[20]

The Government essentially argues that the unwarranted sentencing disparity factor must be determined only with reference to those comparably situated defendants who were sentenced at the time of Mr. Redd's sentencing, not those being sentenced today under a different sentencing structure. While Mr. Redd's sentence in 1997 was not disparate relative to other offenders who had been at that time sentenced for a comparable number of § 924(c) violations,[21] Mr. Redd is now, in effect, to be re-sentenced today, after the passage of the First Step Act; and the need to avoid unwarranted sentencing disparities is to be assessed at the time of his sentencing today relative to those comparable offenders who have been sentenced following the passage of the First Step Act. Nor does the First Step Act's lack of retroactivity justify

---

[20] As mentioned with respect to his original sentence in 1997, *see supra*. n.9, his original sentence is also substantially longer than the average sentence imposed in recent years for at least as serious, if not more, serious crimes. *See* United States Sentencing Commission, *Statistical Information Packet, Fiscal Year 2018, Fourth Circuit*, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2018/4c18.pdf. (in FY 2018, the average sentence in federal courts for murder was 291 months nationally and 327 months in the Fourth Circuit; for kidnapping, 179 months nationally and 223 months in the Fourth Circuit; for manslaughter, 65 months nationally and 26 months in the Fourth Circuit; and for robbery 106 months nationally and 130 months in the Fourth Circuit).

[21] The Court notes in this regard that before the First Step Act there may have been materially different charging policies across districts regarding whether, when and to what extent to bring multiple § 924(c) charges. *See Hearing on Reevaluating the Effectives of the Federal Mandatory Minimum Sentences* (Sep. 18, 2013) (statement of Statement of Judge Patti Saris), available at https://www.judiciary.senate.gov/imo/media/doc/091813RecordSub-Leahy.pdf (citing United States Sentencing Commission, Mandatory Minimum Penalties in the Federal Criminal Justice System (October 2011) at 113-114, available at https://www.ussc.gov/research/congressional-reports/2011-report-congress-mandatory-minimum-penalties-federal-criminal-justice-system). It is also worth noting that statistically, persons convicted of three or more § 924(c) charges were, and remain, relatively small. For example, in FY 2010, of the 2,294 offenders convicted of an offense under § 924(c), 93.6% were convicted of a single count and 147 or 6.4% were convicted of multiple counts, with the average sentence of 351 months for defendants convicted of multiple accounts. *See* United States Sentencing Commission, *Report to Congress: Mandatory Minimum Penalties for Firearms Offenses*, Chapter 9, pp. 269-293, available at https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/mandatory-minimum-penalties/20111031-rtc-pdf/Chapter_09.pdf. Similarly, in FY 2016, only 153 out of 1,976 § 924(c) offenders (or 7.7%) were convicted of multiple § 924(c) counts; and in FY 2017, only 124 out of 2,075 § 924(c) offenders (or 6.0%) were convicted of multiple § 924(c) counts. *See* United States Sentencing *Quick Facts; Section 924(c) Firearms Offenses (FY 2016, FY 2017)*, available at https://www.ussc.gov/research/quick-facts/quick-facts-archives.

withholding sentencing relief given the overall purpose of the First Step Act amendments, which expressly allowed for the possibility for a sentence reduction based on an individualized assessment of the § 3553(a) factors and other criteria.

The Court also finds, based on the applicable considerations, that at this point Mr. Redd does not constitute a danger to the safety of others or the community. *See* 18 U.S.C. § 3142(g);[22] *see also* U.S.S.G. § 1B1.13(2) (requiring court to determine, prior to authorizing any reduction, that "defendant is not a danger" as considered under 18 U.S.C. § 3142(g)). At age 64, he is statistically unlikely to recidivate;[23] and while his criminal conduct involved a firearm, his limited prior criminal history did not involve violence, and his conduct during his more than 20 years in prison is overwhelmingly positive and reflective of substantial rehabilitation. *See* [Doc.

---

[22] Section 3142(g) provides:

    (g) Factors to be considered.—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—

    (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

    (2) the weight of the evidence against the person;

    (3) the history and characteristics of the person, including—

        (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

        (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

    (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

[23] *See also* United States Sentencing Commission, *The Effects of Aging on Recidivism Among Federal Offenders*, p. 30 (December 2017), available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf ("Among offenders released younger than age 21, 67.6 percent were rearrested compared to 13.4 percent of those released age 65 or older. The pattern is consistent across age groups, as age increases recidivism by any measure declined. Older offenders who do recidivate do so later in the follow-up period, do so less frequently, and had less serious recidivism offenses on average.").

326, Exs. 1 (work performance evaluations), 2 (Summary Reentry Plan – Progress Report, dated February 12, 2020)]. Mr. Redd has had no major disciplinary infractions while incarcerated (over 23 years) and since 2015, has been incident free. *Id*., Ex. 2. Moreover, Mr. Redd has demonstrated a commitment to self-improvement, devoting hundreds of hours to vocational programs, assisting others in their rehabilitative efforts, exhibiting solid work habits, caring for mental health inmates, and in the process exceeding his supervisor's expectations across most, if not all, areas of work. *Id*., Exs. 3, 4. Likewise, since 2010, Mr. Redd has served as the head orderly of the Laundry Detail at his facility, where he requires little to no supervision in completing tasks. *Id.,* Ex. 3. It also appears, as evidenced by the letters from his family, that he has strong family ties and a stable plan upon his release, including a place to reside with his aging mother and her husband and an open offer of employment from a security firm, should he be released. *Id*., Ex. 5 (letter dated March 2, 2020 confirming Mr. Redd's offer of employment), Ex. 7 (letters from family members)].

Based on all these considerations, the Court concludes that a reduction to 15 years, from 45 years, is warranted as to Mr. Redd's three § 924(c) convictions; and the Court will so reduce Mr. Redd's sentence, all other terms and conditions of his original sentence to remain the same.

### III.  CONCLUSION

For the above reasons, Defendant Derrick Vincent Redd's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [Doc. 299] is **GRANTED**; and his sentence of 540 months, or 45 years, for his three convictions under 18 U.S.C. 924(c) is **REDUCED** to a total of 180 months, or 15 years, to run consecutive to his sentence of 63 months, for a total sentence of

243 months, with credit for time served, with all other terms and conditions previously imposed to remain in effect.[25]

An Order will be issued.

The Clerk is directed to send copies of this Memorandum Opinion to all counsel of record, to the United States Probation Office, and to the Federal Bureau of Prisons.

/s/
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
March 16, 2020

---

[25] As Mr. Redd has already served more time than his reduced sentence, he is eligible for immediate release, subject to the previously imposed terms of supervised release and restitution.